UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEITH P. BATT,

          Plaintiff,

   v.

CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and DOES 1–20,

          Defendants.

No. C 02-04975 MHP

**MEMORANDUM & ORDER**
**Re: Motion to Certify for Immediate Appeal**

      Plaintiff Keith Batt filed this action, alleging federal civil rights violations and state law torts in connection with his employment by defendant Oakland Police Department. On March 27, 2006, defendants City of Oakland and Oakland Police Department ("defendants") moved for summary judgment. On July 13, 2006, the court denied defendants' motion for summary judgment. On July 21, 2006, defendants brought the present motion for certification for appeal pursuant to 28 U.S.C. section 1292(b). Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

      In each of its prior decisions, the court has set forth the background of this action in detail, and for the present motion, the entire background need not be restated. The court will instead briefly summarize the facts and restate the dispute regarding denial of summary judgment of plaintiff's First Amendment claim.

Plaintiff graduated from the Oakland Police Academy in June 2000 and began work for the Oakland Police Department ("OPD") as a trainee on June 18, 2000. Chuck Mabanag, one of a group of police officers known as the "Riders," was appointed plaintiff's Field Training Officer. During two weeks of training, plaintiff observed numerous illegal acts performed by Mabanag and other Riders, including the beating of suspects, planting of drugs on suspects, and fabrication of police reports. Plaintiff was instructed by Officer Frank Vazquez, one of the Riders, that he was never to report any of the misconduct, and that if plaintiff reported any of the misconduct he saw, Vazquez would beat him.

Plaintiff was uncomfortable with these circumstances, and reported what he had seen to a former instructor, Mary Guttormson. Guttormson took no action, other than to tell plaintiff to stand up for himself. Plaintiff continued to train with the Riders for a few more days, and decided that he could not tolerate the situation any longer. On July 3, 2000, plaintiff resigned from the Oakland Police Department. One or two days after his resignation, plaintiff discussed what had happened with the Internal Affairs Division of the OPD.

Plaintiff has introduced a number of pieces of evidence that, despite any official policy to the contrary, the culture of the Oakland Police Department and the express commands of his superiors established that plaintiff had a duty *not* to report misconduct, and that plaintiff would suffer retaliation if he did report misconduct. During his time in the academy, plaintiff heard a story of an officer who had "snitched" on one of his colleagues and ruined his chances of being successful at the OPD. Officer Vazquez threatened physical harm to plaintiff if he did report misconduct. After he resigned, plaintiff heard that he would "get his ass kicked" if he returned to the OPD, and another officer overheard a locker room discussion regarding going to plaintiff's house to "do a special project." Virtually everyone plaintiff trained with stopped talking to him. Two instructors told him not to return to work and that it would be very difficult if he did. Oakland Police Chief Word opined during his deposition that plaintiff would have had difficulty advancing as an officer had he decided to remain with OPD after reporting the Riders to internal affairs. Finally, plaintiff provides evidence that the department was lax in responding to previous complaints about Mabanag, and that other

2

officers who spoke out against the "Riders" suffered harassment.

Plaintiff subsequently filed this lawsuit, alleging violations of his rights under the First and Fourteenth Amendments to the United States Constitution, as well as various state law torts. Defendants subsequently filed a motion for judgment on the pleadings as to each of plaintiff's claims. This court granted the motion insofar as it related to plaintiff's claims for violation of substantive and procedural due process, negligent hiring, retention and supervision, and breach of statutory duty. Defendants then moved for summary judgment. The court found that plaintiff's claim of retaliation in violation of the First Amendment failed because plaintiff failed to show that his speech was a substantial or motivating factor for an adverse employment action. Summary judgment was denied as to plaintiff's claim of prior restraint in violation of the First Amendment, and summary judgment was denied on plaintiff's state law claims of constructive discharge and intentional and negligent infliction of emotional distress. Defendants now bring this request for certification for immediate appellate review pursuant to 28 U.S.C. section 1292(b).

LEGAL STANDARD

As a general rule, appeal may be had only from final judgments. 28 U.S.C. § 1291; Midland Asphalt Corp. v. United States, 489 U.S. 794, 798 (1989). However, 28 U.S.C. section 1292(b) creates an exception to the general rule. James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). "In rare circumstances, the district court may approve an immediate appeal of such an order by certifying that the order 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" Id. (quoting 28 U.S.C. § 1292(b)). Use of immediate interlocutory appeals is reserved for "extraordinary cases." United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

The certification inquiry has been broken into three steps: (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation. In re Cement

3

Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982), aff'd sub nom. Arizona v. Ash Grove Cement Co., 459 U.S. 1190 (1983).  The decision to certify rests within the sound discretion of the district court.  Mohasco Indus., Inc. v. Lydick, 459 F.2d 959, 960 (9th Cir. 1972) (district judge "can certify" a question if judge "believes that the question is appropriate for an interlocutory appeal").

DISCUSSION

I.    Controlling Question of Law

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." In re Cement, 673 F.2d at 1026.  Section 1292(b) has been applied to discovery orders, orders denying summary judgment, orders denying a motion to remand, and orders decertifying a class.  Price Stern, 283 F.3d at 1068 n.6.  The term "controlling" has been construed broadly and may, in limited circumstances, even reach such issues as "needless expense and delay." Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996).

Contrary to the assertions of both parties, speculation regarding the potential for remand to state court following the adjudication of all federal questions has little bearing.  Plaintiff asserts in opposition—without citation to authority—that a question of law is controlling when disposition of that question would terminate the litigation.  This is not the standard.  The present request for certification pertains to an order denying summary judgment.  Summary judgment has been held in this Circuit to be a controlling question of law under section 1292(b); thus, a controlling question of law has been raised.  Price Stern, 283 F.3d at 1068 n.6; Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1319 (9th Cir. 1992) (appeal of denial of summary judgment under section 1292(b)).

II.   Substantial Grounds for Difference of Opinion

Defendants advance two arguments that substantial grounds for a difference of opinion inhere in the denial of summary judgment on plaintiff's claim of prior restraint in violation of the

4

First Amendment. First, defendants argue that, because the denial of summary judgment was based in part on interpretation of the recent Supreme Court opinion in Garcetti v. Ceballos, ___ U.S. ___, 126 S. Ct. 1951 (2006), "there must necessarily be a difference of opinion as to the interpretation and application" of that case. Defs.' Req. for Certification 5:1–2. Second, defendants argue that the existence of a culture in the Oakland Police Department that may have created a duty to not report conduct, despite rules to the contrary, "is certainly an issue of first impression, and one that could reasonably be a subject of a difference of opinion." Id. at 5:4–9. Both arguments can be quickly addressed.

Defendants' first argument boils down to the assertion that every time the Supreme Court decides a case, there is a substantial basis for difference of opinion regarding the holding of that case until it has been interpreted a few times by the circuit courts. There is no authority for this position. This court is required to apply the decisions of the Supreme Court. See MacDonald v. Kahikolu Ltd., 442 F.3d 1199, 1202 (9th Cir. 2006) (district and circuit courts are compelled to obey the decisions of the Supreme Court). The fact that this court is among the first to interpret Garcetti does not, of itself, give rise to a substantial basis for difference of opinion. Cf. Baranski v. Serhant, 602 F. Supp. 33, 36 (D.N.J. 1985) (an issue never before addressed is not necessarily an issue of substance).

Defendants' second argument is that a finding that the OPD had a policy or unwritten rule against reporting the misdeeds of fellow officers, contrary to the OPD's stated policy that such misdeeds are to be reported, is an issue of first impression. This is, of course, a factual determination; defendants presumably mean to argue that whether such an unwritten policy can violate the First Amendment is an issue of first impression. Putting aside whether an issue of first impression necessarily creates a substantial basis for difference of opinion, this issue is in fact not one of first impression. In Blair v. City of Pomona, 223 F.3d 1074 (9th Cir. 2000), the Ninth Circuit analyzed at length a similar complaint. A police officer had reported the misdeeds of fellow officers, and suffered retaliation and chastising by fellow officers as a result. He brought a claim against the municipality, alleging that there was an unwritten policy or custom, approved by city

5

policy-makers, condoning retaliation and a police "code of silence." Id. at 1079–80. The court found that such an unwritten policy could form the basis for a First Amendment violation. The alleged custom or policy of the OPD in the present case is substantially similar. The issue is not one of first impression, and does not give rise to a substantial difference of opinion on those grounds.

Additionally, it has long been recognized that unwritten policies in other contexts can operate as unconstitutional prior restraints on speech. Niemotko v. Maryland, 340 U.S. 268, 271–72 (1951) (denial of permit for religious talk in public park based on an unwritten "amorphous 'practice'" of granting permits for use of the park constituted a prior restraint in violation of the First Amendment). While prior cases dealing with the precise factual predicate of the present case may not exist, this does not necessarily give rise to substantial grounds for difference of opinion. See, e.g., In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) ("the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion"). A more substantial difference between the application of the law in the present case and the application of the same law in other courts is required. See, e.g., Environmental Prot. Info. Ctr. v. Pacific Lumber Co., No. C 01-2821 MHP, 2004 U.S. Dist. LEXIS 6674 at *15–17 (N.D. Cal. Apr. 19, 2004) (Patel, J.) (difference of opinion between the party seeking interlocutory review and the court insufficient to create substantial grounds for difference of opinion where no difference of opinion existed among the courts).

The court did not ignore the impact of Garcetti in ruling on summary judgment, and the court does not ignore Garcetti now. Garcetti holds that the speech of a public employee made pursuant to his duties is not entitled to full First Amendment protection, because the employee is not speaking as a citizen for First Amendment purposes. Id., 126 S. Ct. at 1960. The claim made in Garcetti was for retaliation, and plaintiff's retaliation claim has already been dismissed. Id. at 1956. However, the rule announced in Garcetti is applicable to the speech of any public employee "made pursuant to official responsibilities." Id. at 1961. Accordingly, the rule of Garcetti has application in the context of a prior restraint claim.

6

First, it must be determined whether the speech plaintiff was allegedly restrained from making was speech pursuant to his duties as a public employee. If it was speech pursuant to his duties as a public employee, then Garcetti precludes application of the full force of the First Amendment. If it was speech outside his duties—whether these duties were official or unofficial, based on policy that is written or unwritten—and it was speech on a matter of public interest, then plaintiff is entitled to the protection of the First Amendment. See id. at 1962 ("the listing of a given task in an employee's written job description is neither necessary nor sufficient" in determining whether speech was made pursuant to job duties). A question of fact exists as to whether the speech plaintiff was allegedly restrained from making was speech pursuant to his actual job duties.

Second, it must be determined whether, if the speech plaintiff sought to make was outside his duties, plaintiff's speech was in fact restrained—that is, whether prior OPD policy forbade the communications plaintiff sought to make, see Alexander v. United States, 509 U.S. 544, 550 (1993)—and whether this restraint was valid. In determining the validity of any such restraint, the court must weigh the "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." United States v. National Treasury Employees Union, 513 U.S. 454, 465–66 (1995) (applying the balancing test of Pickering v. Board of Educ. of Township High Sch. Dist., 391 U.S. 563 (1968)).

Applying established constitutional standards in the context of a recent Supreme Court decision does not give rise to substantial grounds for difference of opinion. Indeed, well before Garcetti it has been noted that the prior restraint balancing test of Pickering is applied to public employees only when they speak as citizens on matters of public interest. National Treasury, 513 U.S. at 466. While Garcetti "modified" what constitutes the protected speech of a public employee, Freitag v. Ayers, No. C 00-02278 TEH, 2006 U.S. App. LEXIS 23383 at *34 (9th Cir. Sept. 13, 2006), this modification does not, absent conflicting application of Garcetti in other courts, create substantial grounds for difference of opinion.

1  There are insufficient grounds for difference of opinion to merit certification for appeal
2  according to section 1292(b).

3

4  III.    <u>Material Advancement of the Ultimate Termination of the Litigation</u>

5  Because there are no substantial grounds for difference of opinion, defendants' motion for
6  certification of appeal is denied.  As a result, the court need not reach the issue of whether a reversal
7  on appeal would materially advance the ultimate termination of the litigation.  However, the granting
8  of summary judgment as to plaintiff's claim of an unconstitutional prior restraint would certainly
9  advance the ultimate disposition of the litigation, or at least a portion of it, and this element has been
10 met.

11

12 <u>CONCLUSION</u>

13 For the reasons stated, defendants' motion to certify for interlocutory review under 28 U.S.C.
14 section 1292(b) the court's denial of summary judgment as to plaintiff's prior restraint claim is
15 DENIED.

16

17 IT IS SO ORDERED.

18

19

20 Dated: October 11, 2006

MARILYN HALL PATEL
21 District Judge
United States District Court
22 Northern District of California

8